UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

IMAN SOLANTI BOZCHALOOI, et al.,

          Plaintiffs,

v.

UNITED STATES DEPARTMENT OF STATE, et al.,

          Defendants.

No. 2:25-cv-02983-DJC-SCR

ORDER

Defendants move for dismissal or, in the alternative, summary judgment on Plaintiffs' claims that Defendants have unreasonably delayed adjudication of Plaintiffs' immigrant visa application. Defendants argue that Plaintiffs' claims are unreviewable because the application was already reviewed and refused by a consular officer under 8 U.S.C. § 1201(g), which was a final adjudication, and judicial review of final consular decisions is precluded under the doctrine of consular nonreviewability. Defendants also argue that, even if the refusal was not a final decision, it has only been slightly over a year since the visa application was refused, which does not constitute an unreasonable delay.

The Court finds that there has been no unreasonable delay in adjudicating Plaintiffs' visa application. Accordingly, the Court will grant Defendants' motion.

1

**BACKGROUND**

Plaintiff Iman Solanti Bozchalooi is a United States citizen.  (Compl. (ECF No. 1) ¶ 4.)  Plaintiff Mahvash Oskoui is a national and resident of Iran.  (*Id.* ¶ 14.)  Plaintiff Oskoui is Plaintiff Bozchalooi's biological mother.  (*Id.* ¶ 4.)

Under the Immigration and Nationality Act ("INA"), consular officers may issue immigrant and nonimmigrant visas to foreign nationals who are eligible for those visas and who are admissible to the United States.  *See* 8 U.S.C. § 1201.  One of the methods by which foreign nationals may immigrate to the U.S. is via their familial relationship with a U.S. citizen or lawful permanent resident.  This includes issuance of visas to applicants who are sponsored by U.S. citizens.  *See* 8 U.S.C. § 1153(a)(1)–(4).

A family-based immigrant visa application is initiated when a U.S. citizen or legal permanent resident files a Form I-130 with United States Citizenship and Immigration Services ("USCIS").  *See* 8 U.S.C. § 1154.  USCIS verifies that the petitioner is a U.S. citizen or legal permanent resident and that a qualifying relationship exists between the petitioner and the beneficiary.  *See* 8 C.F.R. § 204.1(a)(1).  Upon a Form I-130 approval, if the beneficiary of the immigrant visa petition is residing outside of the U.S., the petition is then sent to the National Visa Center ("NVC") for pre-processing, and the beneficiary is able to begin the process of formally applying for an immigrant visa by submitting a Form DS-260.

After completing the Form DS-260, and submitting fees, forms, and supporting documentation to the NVC for review, the application is then sent to the U.S. Embassy having jurisdiction over the noncitizen's place of residence for an interview.  At the end of a beneficiary's immigrant visa interview at the U.S. Embassy or Consulate, the consular officer informs the applicant whether their visa application is approved or denied.  The consular officer "must issue the visa, refuse the visa under INA 212(a) or 221(g) or other applicable law, . . . or discontinue granting the visa."  22 C.F.R. § 42.81(a)).

On September 15, 2022, Plaintiff Bozchalooi filed a petition on behalf of his mother, Plaintiff Oskoui.  (Compl. ¶ 28.)  The petition was approved on August 7, 2023, and forwarded to the NVC for processing.  (*Id*. ¶ 29.)  Plaintiff Oskoui submitted her completed DS-260 on October 7, 2023.  (*Id*. ¶ 30.)  Plaintiff Oskoui attended her interview on March 24, 2025.  (*Id*. ¶ 32.)  At the conclusion of the interview, Plaintiff Oskoui's application was refused by the consular officer under section 221(g) of the INA, 8 U.S.C. § 1201(g).  (*Id*. ¶ 32.)  Plaintiff's application was placed in administrative processing "without further explanation" by the consular officer.  (*Id*.)  To the Court's knowledge, Plaintiff Oskoui's application still remains in administrative processing at the time of this Order.

Plaintiffs brought the present action based on the above.  Plaintiffs don't specifically state the causes of action within the Complaint, but identify the Administrative Procedure Act ("APA"), mandamus, and due process within the Complaint.  (*See* Compl. ¶¶ 40, 50, 56–57.)  Subsequent briefing makes clear that both parties understand Plaintiffs' Complaint as bringing claims under the APA, Mandamus Act, and due process clause.[1]  (*See* Mot. (ECF No. 8) at 6; Opp'n (ECF No. 13) at 5.)  Briefing on Defendants' Motion to Dismiss or, in the alternative, for Summary Judgment is complete.  (*See* Mot.; Opp'n; Reply (ECF No. 14).)  This matter was submitted without oral argument pursuant to Local Rule 230(g).

## LEGAL STANDARD

**I.  Dismissal under Federal Rule of Civil Procedure 12(b)(6)**

A party may move to dismiss a complaint for "failure to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).  The motion may be granted only if the complaint lacks a "cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.

---

[1] Defendants correctly note that "[t]he complaint does not include any counts," (Mot. at 6), but otherwise correctly identify the nature of Plaintiffs' claims. In their Opposition, Plaintiffs identify their claims as arising from the APA and Mandamus Act, not the due process clause.  (*See* Opp'n at 5.)  To the extent Plaintiffs raise a due process clause claim, that is addressed below.

3

2008).  The court assumes all factual allegations are true and construes "them in the light most favorable to the nonmoving party." *Steinle v. City & County of San Francisco*, 919 F.3d 1154, 1160 (9th Cir. 2019).  However, if the complaint's allegations do not "plausibly give rise to an entitlement to relief" the motion must be granted.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A complaint need contain only a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), not "detailed factual allegations," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  However, this rule demands more than unadorned accusations; "sufficient factual matter" must make the claim at least plausible.  *Iqbal*, 556 U.S. at 678.  In the same vein, conclusory or formulaic recitations of elements do not alone suffice.  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

**II.  Summary Judgment under Federal Rule of Civil Procedure 56**

Summary judgment may be granted when the evidence shows that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The "threshold inquiry" is whether there are any factual issues that could reasonably be resolved in favor of either party, or conversely, whether the facts are so one-sided that one party must prevail as a matter of law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

In a summary judgment motion, the moving party must inform the court of the basis for the motion and identify the portion of the record that they believe demonstrates the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its initial burden, the burden then shifts to the opposing party, who must establish that there is a genuine issue of material fact.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585

(1986). Summary judgment is mandated where the nonmoving party fails to set forth "specific facts showing that there remains a genuine factual issue for trial" and evidence "significantly probative as to any [material] fact claimed to be disputed." *Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir. 1983) (internal quotation marks omitted). If the evidence presented by the nonmoving party is "merely colorable, . . . or is not sufficiently probative, . . . summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (internal citations omitted).

**DISCUSSION**

## I. Plaintiffs' APA Claim

Plaintiffs allege that Defendants have unreasonably delayed final adjudication of Plaintiff Oskoui's application in violation of APA § 555(b). (Compl. ¶ 40 (citing 5 U.S.C. § 555(b)).) Section 706(1) of the APA allows the Court to "compel agency action unlawfully withheld or unreasonably delayed," while section 706(2) allows the Court to "hold unlawful and set aside agency action, findings, and conclusions." 5 U.S.C. §§ 706(1)–(2). Because "[a] challenge to an agency's alleged failure to act is more appropriately channeled through Section 706(1)," the Court will evaluate Plaintiffs' claims under APA § 706(1). *Al Otro Lado, Inc. v. Nielsen*, 327 F. Supp. 3d 1284, 1309 (S.D. Cal. 2018) (citations omitted). To succeed on an APA unreasonable delay claim, Plaintiffs must show that: (1) the agency has a nondiscretionary duty to act; and (2) the agency has unreasonably delayed acting on that duty. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 62–64 (2004).

Defendants argue that Plaintiffs have not identified a non-discretionary duty to adjudicate Plaintiff Oskoui's visa application and that Plaintiffs' claims are barred under the doctrine of consular nonreviewability because the refusal of Plaintiff Oskoui's application was a final decision. Defendants also argue that even if Plaintiffs' claims are not barred, Plaintiffs failed to state a claim based upon unreasonable delay.

### A. Defendants have a Non-Discretionary Duty to Adjudicate Plaintiff's Visa Application

Section 706(1) "grants judicial review only if a federal agency has a 'ministerial or non-discretionary' duty amounting to a 'specific, unequivocal command.'" *Anglers Conservation Network v. Pritzker*, 809 F.3d 664, 670 (D.C. Cir. 2016) (quoting *Norton*, 542 U.S. at 63–64).  Plaintiffs argue Defendants have a non-discretionary duty to adjudicate Plaintiff Oskoui's visa application within a reasonable time under section 555(b).  (*See* Opp'n at 8–9.)

Section 555(b) of the APA creates a non-discretionary duty to render a final adjudication in a visa application.  *See Mobayen v. Blinken*, 780 F. Supp. 3d 969, 981 (C.D. Cal. 2025) (collecting cases); *see also Ali v. Ordeman*, No. 2:23-cv-02822-CKD, 2024 WL 2274912, at *4 (E.D. Cal. May 20, 2024); *Khan v. Blinken*, No. 2:23-cv-02814-CKD, 2024 WL 3446432, at *5 (E.D. Cal. July 17, 2024).  Defendants argue that Plaintiff has failed to identify a violation of section 555(b) because the consular officer's refusal under INA section 221(g) satisfies the final adjudication requirement of section 555(b).  (Mot. at 9–10.)  Defendants acknowledge that "many district courts have found a refusal under INA 221(g)/ 8 U.S.C. § 1201(g) for administrative processing and security screening is not a final refusal[.]" (Reply at 2 (citations omitted).)  But Defendants nevertheless argue that these cases were wrongly decided and that section 555(b) does not create a non-discretionary duty.

The Court joins with other district courts in finding that section 555(b) imposes a non-discretionary duty on Defendants to adjudicate Plaintiff Oskoui's visa application within a reasonable time.  The Court further joins other district courts in finding this duty is not satisfied by the refusal of a visa application under INA section 221(g) for administrative processing.  Defendants argue that the regulations provided by 22 C.F.R. § 42.81(a) establish that a refusal under section 221(g) is a final decision.  But this ignores that subsection (c) prescribes a required process for further action to be taken by the consular officer to review the refusal and issue a final decision.  *See* 22

C.F.R. § 42.81(c) ("If the grounds of ineligibility upon which the visa was refused cannot be overcome by the presentation of additional evidence, the principal consular officer at a post, or a specifically designated alternate, shall review the case without delay, record the review decision, and sign and date the prescribed form."); *see also Mobayen*, 780 F. Supp. 3d at 982. Accordingly, Plaintiffs have identified a non-discretionary duty that Defendants allegedly failed to satisfy with regard to the timely adjudication of Plaintiff Oskoui's visa application.

### B. Plaintiffs' Claim is Not Barred by Consular Nonreviewability

Plaintiffs alleged that Plaintiff Oskoui's visa application has not yet received a final adjudication because it has been placed in administrative processing, where it remains. (Opp'n at 6–8; *see* Compl. ¶ 32.) As discussed above, Defendants argue that the consular officer's refusal of the visa application was a final decision and thus is subject to the doctrine of consular nonreviewability. As the Court has previously held in other similar cases, the doctrine of consular nonreviewability is not applicable here. *See Alam v. Blinken*, No. 2:24-cv-01103-DJC-CKD, 2024 WL 4804557, at *4–6 (E.D. Cal. Nov. 15, 2024). As noted above, the refusal was not a final decision, and Plaintiff does not seek review of that decision.

The doctrine of consular nonreviewability enshrines a "longstanding jurisprudential principle that, ordinarily, a consular official's decision to deny a visa to a foreigner is not subject to judicial review." *Munoz v. U.S. Dep't of State*, 50 F.4th 906, 909 (9th Cir. 2022) (cleaned up). For the doctrine to apply, a denial of a visa application must have occurred. *See, e.g., Patel v. Reno*, 134 F.3d 929, 931–32 (9th Cir. 1997) ("Normally a consular official's discretionary decision to grant or deny a visa petition is not subject to judicial review." (citations omitted)). But the doctrine does not apply where a plaintiff seeks a final decision on their visa application rather than judicial review of a consular decision. *Id.* ("However, when the suit challenges the authority of the consul to take or fail to take an action as opposed to a decision taken

within the consul's discretion, jurisdiction exists." (citation omitted)); *see also Abbassi v. Gaudiosi*, No. 1:23-cv-01573-CDB, 2024 WL 1995246, at *4 (E.D. Cal. May 6, 2024).

As discussed, the consular's decision was not final. (*See supra* Discussion, I.A.) Plaintiffs are also express in their statement in the Complaint that they "do[] not seek to have the Court determine the merits of Plaintiff's applications, but only to compel the State Department to follow its statutory and regulatory mandate to process their applications to completion, either to a denial with reasons of denial or an issuance of a visa." (Compl. ¶ 12.) Plaintiffs' claims are thus not barred by the doctrine of consular nonreviewability. *See Abbassi*, 2024 WL 1995246, at *4.

**C. The Delay in Reviewing Plaintiff's Visa Application is Reasonable**

"When there is no set deadline by which an agency must act, a court evaluates whether the agency's delay is unreasonable by applying the six factors established by the D.C. Circuit in *Telecommunications Research & Action Center v. FCC* ["*TRAC*"] and adopted by the Ninth Circuit in *Independence Mining Co. v. Babbitt*[.]" *Alaska Indus. Dev. & Exp. Auth. V. Biden*, 685 F. Supp. 3d 813, 857 (D. Alaska 2023) (citing 750 F.2d 70 (D.C. Cir. 1984); 105 F.3d 502, 507 (9th Cir. 1997)). The *TRAC* factors are:

> (1) the time agencies take to make decisions must be governed by a rule of reason; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*In re Nat. Res. Def. Council, Inc.*, 956 F.3d 1134, 1138–39 (9th Cir. 2020) (quoting *TRAC*, 750 F.2d at 79–80).

Plaintiffs suggest that the Court should abstain from analyzing the *TRAC* factors at this point in the litigation.  (Opp'n at 10.)  Plaintiffs have not, however, identified with any specificity what additional facts require further development.  *See* Fed. R. Civ. Proc. 56(d) (court may deny a motion if the nonmovant shows that they require discovery to justify their opposition).  Plaintiff also has not "proffer[ed] sufficient facts to show that [some] evidence sought exists, and that it would prevent summary judgment." *Kapoor v. Blinken*, No. 21-cv-01961-BLF, 2022 WL 181217, at *5 (N.D. Cal. Jan. 20, 2022) (quoting *Chance v. Pac-Tel Teletrac Inc.*, 242 F.3d 1151, 1161 n.6 (9th Cir. 2001)).  District courts in this circuit routinely decide immigration actions on summary judgment without discovery.  *See, e.g., Ahmed v. United States Dep't of State*, No. 23-CV-02474-SVK, 2024 WL 315705, at *6 (N.D. Cal. Jan. 26, 2024) (denying discovery to develop factual record as to reasonableness of two-year agency delay); *Ali v. Ordeman*, No. 2:23-cv-02822-CKD, 2024 WL 2274912, at *12–18 (E.D. Cal. May 17, 2024) (ruling on reasonableness of 14 month agency delay at dismissal stage).  *But see Iqbal*, 2023 WL 7418353, at *8 (declining to apply *TRAC* factors at dismissal stage).  As Plaintiffs have not demonstrated discovery is necessary or warranted in this case, the Court will rule on Defendants' Motion.

### 1.  First *TRAC* Factor: Rule of Reason

When considering the *TRAC* factors, the Ninth Circuit has held that "[t]he most important is the first factor, the 'rule of reason,' though it, like the others, is not itself determinative." *In re A Cmty. Voice*, 878 F.3d 779, 786 (9th Cir. 2017).  The gist of the rule of reason inquiry is "whether there is any rhyme or reason for the Government's delay – in other words, whether the agency's response time . . . is governed by an identifiable rationale." *Poursohi v. Blinken*, No. 21-CV-01960-TSH, 2021 WL 5331446, at *4 (N.D. Cal. Nov. 16, 2021) (quotation marks and citation omitted).  When the alleged delay involves the processing of an immigrant visa application, district courts have examined both the length of the delay and the reasons for the delay.  *See id*. at *4–7 (collecting cases).  In the context of alleged delay involving visa application

processing, "[t]he delay is measured from the time that Plaintiffs attended their interview, not the time that they first petitioned USCIS." *Ferdowski v. Blinken*, No. 8:23-cv-01123-JWH-KES, 2024 WL 685912, at *4 & n.26 (C.D. Cal. Feb. 12, 2024).

Plaintiff Oskoui was interviewed by a consular officer on March 24, 2025, and her visa application was refused for further administrative processing that same day. (Compl. ¶ 32.) Thus, at the time of this order, Plaintiff's application has been pending for between twelve and thirteen months.[2]

This delay, however, falls far short of what has previously been considered unreasonable in the immigration context. "Generally, courts have found 'immigration delays in excess of five, six, [and] seven years are unreasonable, while those between three to five years are often not unreasonable.'" *Ortiz v. United States Dep't of State*, No. 1:22-cv-00508-AKB, 2023 WL 4407569, at *8 (D. Idaho July 7, 2023) (quoting *Arab v. Blinken*, 600 F. Supp. 3d 59, 70 (D.D.C. 2022)); *see also Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (concluding 29-month delay not unreasonable); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (concluding "a delay of [two years] does not typically require judicial intervention"); *Islam v. Heinauer*, 32 F. Supp. 3d 1063, 1071 (N.D. Cal. 2014) (collecting cases and noting courts in that district "have generally found delays of four years or less not to be unreasonable").

The Court notes that there is a dearth of circuit law addressing what constitutes unreasonable delay in the immigration context, particularly in the family-based immigrant visa context. In addition, many of the district court cases that have found delays of less than four years reasonable involve visa petitions where plaintiffs were in the United States and not facing family separation, which is clearly distinguishable from the context here. For example, in *Motaghedi v. Pompeo*, 436 F. Supp. 3d 1345 (E.D. Cal. 2020), the court surveyed unreasonable delay cases and concluded it was

---

[2] Plaintiff notes the time that accrued prior to the interview. (Opp'n at 10–11.) The slow progression of the application process as a whole is of substantial discomfort for Plaintiffs. But the Court's analysis is focused on the delay at issue here, which is the post-interview delay while the visa application remains in administrative processing.

"not entirely convinced that the four-year guidepost suggested by these cases involving I-485 petitions or I-526 investor visas (where plaintiffs were likely in the United States and not facing family separation) is a direct comparison to what is happening in this case, in which Plaintiffs have been waiting an average of 563 days for waiver adjudications, whose families are enduring separation, and whose relatives are living under the escalating threat of war." *Id.* 1359–61.  Similarly, this Court is not convinced that Plaintiffs here must wait as long as five years to bring an unreasonable delay claim.  However, this Court has not found, nor have Plaintiffs pointed to, *any* case in the immigration context where a delay of only thirteen months has been deemed unreasonable.  Thus, the Court cannot find that the length of delay alone is unreasonable at this point.  *See Alam*, 2024 WL 4804557 (finding an eighteen-month delay was not unreasonable).

Accordingly, the first *TRAC* factor weighs in Defendants' favor.

**2.  Second *TRAC* Factor: Congressional Timetable**

"[W]here Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for [the] rule of reason" analysis.  *TRAC*, 750 F.2d at 80. Plaintiffs do not identify the source of any specific timetable in the Complaint or Opposition.  Without citation to any statute, Plaintiffs do reference a "180-day guideline" (Opp'n at 11; *see* Compl. ¶¶ 4, 7), which Defendants interpret to be a reference to 8 U.S.C. § 1571(b).  This section provides that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application . . . ."  8 U.S.C. § 1571(b).  As Defendants note, the Ninth Circuit has held that similar "sense of Congress" language is "'non-binding, legislative dicta' which creates no obligations." *Ali*, 2024 WL 2274912, at *6 (quoting *Yang v. Cal. Dep't of Soc. Servs.*, 183 F.3d 953, 961-62 (9th Cir. 1999)).  On this basis, district courts have consistently rejected that section 1571(b) creates a congressionally-mandated deadline.  *See Ali*, 2024 WL

11

2274912, at *6; *see also Aminzadeh v. Blinken*, No. 2:24-cv-02025-DSF-MRW, 2024 WL 3811153, at *6 (C.D. Cal. Aug. 9, 2024); *Iqbal v. Blinken*, No. 2:23-cv-01299-KJM-CSK, 2024 WL 3904959, at *10 (E.D. Cal. Aug. 22, 2024).

Although there is no mandated timeline, the court notes "a non-binding deadline may still be an <u>indication</u> of the speed with which Congress expects the agency to proceed." *Ramirez v. Blinken*, 594 F. Supp. 3d 76, 94 (D.D.C. 2022) (emphasis in original) (internal marks and citations omitted).  Thus, while the 180-day timeline may be aspirational, a substantial delay in excess of this goal runs counter to Congressional expectations.  *Cf., e.g., Keller Wurtz v. U. S. Citizenship & Immigr. Servs.*, No. 20-2163, 2020 WL 4673949, at *5 (N.D. Cal. Aug. 12, 2020) ("USCIS is correct that this timeline is not mandatory, but it nevertheless weighs in favor of finding the delay here—approximately four times Congress's stated goal—to be unreasonable.").

However, because Congress has not yet imposed a mandatory timeline and the delay otherwise comports with the rule of reason, the second *TRAC* factor is neutral based on this record.[3]  *See Jain v. Renaud*, No. 21-CV-03115-VKD, 2021 WL 2458356, at *5 (N.D. Cal. June 16, 2021) (second *TRAC* factor was neutral where Congress did not mandate a timeline); *see also Poursohi*, 2021 WL 5331446, at *9 ("[G]iven the absence of a mandatory timetable for adjudication of Plaintiffs' Application combined with the fact that the delay comports with the rule of reason, the second *TRAC* factor also weighs in Defendant's favor or is at least neutral.").

### 3.  Third and Fifth *TRAC* Factors: Nature of Interests

"The third and fifth factors overlap, requiring the court to consider whether human health and welfare are at stake, and the nature and extent of the interests prejudiced by the delay."  *Poursohi*, 2021 WL 5331446, at *9.  Plaintiffs allege that the delay has caused them "substantial economic loss and emotional hardship . . . ."

---

[3] Defendants also argued that section 1571(b) "applies to the Immigration and Naturalization Services, not the State Department."  (Reply at 7.)  Given the Court's determination that section 1571(b) does not create a mandatory timeline, this argument is ultimately irrelevant and need not be addressed.

(Compl. ¶ 10.)  In their Opposition, Plaintiffs note that "given the current war between the United States and Iran, Plaintiff[ Oskoui] lives in constant fear and danger."  (Opp'n at 12.)  Plaintiffs also note the difficulties in communication and Plaintiff Oskoui's advanced age.  (*Id.* at 12–13.)

The Court acknowledges the severe effect on an individual's health and welfare that separation from family can cause.  *See, e.g., R. v. U.S. Citizenship & Immigr. Servs.*, No. 2:23-cv-05460 DDP-ASx, 2023 WL 9197564, at *4 (C.D. Cal. Dec. 6, 2023) (concluding the third and fifth TRAC factors favored the plaintiff in light of "the significant harm and emotional distress that family separation causes"); *Ghadami v. United States Dep't of Homeland Sec.*, No. CV 19-00397-ABJ, 2020 WL 1308376, at *9 (D.D.C. Mar. 19, 2020) (weighing third and fifth TRAC factors in favor of visa applicant who alleged that he was "irrevocably harmed" by separation from his children and wife).  This effect is undoubtedly multiplied by the geopolitical conditions where Plaintiff Oskoui presently resides.

Thus, the Court concludes the third and fifth *TRAC* factors favor Plaintiffs.

### 4.  Fourth *TRAC* Factor: Effect of Expediting Delayed Action

Under the fourth *TRAC* factor, the Court considers the effect of expediting the adjudication of the plaintiff's applications on other agency action of a higher or competing priority.  *Kapoor*, No. 2022 WL 181217, at *8.  "Most courts have found that the fourth *TRAC* factor weighs heavily in the agency's favor when a judicial order putting plaintiffs at the head of the line would simply move all others back one space and produce no net gain." *Jain*, 2021 WL 2458356, at *6.

Plaintiffs ask the Court to order that Defendants process Plaintiff Oskoui's visa application. (*See* Compl. at 8.)  However, "Plaintiffs make no showing that would justify moving them to the head of the queue, or why their petitions should be processed immediately while other similarly-situated petitioners wait their turn." *Jain*, 2021 WL 2458356, at *6.  The effect of expediting Plaintiffs' application undoubtedly favors the Defendants, as expediting Plaintiff S. Oskoui's application would result in no

net gain in the backlog while disadvantaging visa applicants of higher priority or of the same priority but whose applications have been pending longer.  *Poursohi*, 2021 WL 5331446, at *11; *see also Throw v. Mayorkas*, No. 3:22-CV-05699-DGE, 2023 WL 2787222, at *5 (W.D. Wash. Apr. 5, 2023) (noting many families face delays and ordering the State Department to schedule the beneficiary plaintiff's interview would not ameliorate the situation).

Plaintiffs argue that they are not asking to be prioritized over others and instead "are asking this Court to compel completion of a nondiscretionary duty to render a final adjudication that Defendants have already undertaken."  (Opp'n at 11.)  But this appears to be a distinction without a difference.  Granting relief and ordering Defendants to adjudicate Plaintiff Oskoui's application would necessarily push others further back in the process.  *See Aghchay v. U.S. Dep't of State*, No. 22-cv-5708-PA-PVC, 2022 WL 19569516, at *3 (C.D. Cal. Dec. 20, 2022) ("Granting the relief Plaintiff seeks would simply push others, some of whom may not have the resources to commence litigation, further back in the process." (cleaned up)); *see also Ahmed v. Bitter*, No. 4:22-cv-02474, 2024 WL 1340255, at *5 (S.D. Tex. Mar. 28, 2024) ("[E]xpediting any putative delayed action on Plaintiff's application will affect other agency priorities, while sending other applicants, whom the Government is entitled to prioritize for foreign policy and other reasons, to the back of the line.")

The fourth *TRAC* factor weighs in favor of Defendants.

### 5.  Sixth *TRAC* Factor: Impropriety

The sixth TRAC factor is "not really a 'factor,' but merely a confirmation that agency delay need not be intentional to be unreasonable."  *Feng v. Beers*, No. 2:13-CV-02396-JAM, 2014 WL 1028371, at *5 (E.D. Cal. Mar. 14, 2014).  If a plaintiff does not allege bad faith, courts should either ignore this factor or hold that it slightly favors the government without "excus[ing] unreasonable delay."  *Id.*

Plaintiffs assert that "the absence of any meaningful progress or communication not prompted by Plaintiffs suggest at minimum a lack of diligence and inefficiency that

14

supports a claim for agency impropriety." (Opp'n at 12.) However, this factor does not concern the length or nature of the delay or whether Defendants have provided adequate communication during the delay, but whether the delay is improper. The Complaint does not plausibly allege that the delay is intentional or the result of impropriety on the part of Defendants. *See Sawahreh*, 630 F. Supp. 3d at 164.

The Court finds no lurking impropriety, and therefore concludes that the sixth *TRAC* factor favors neither party.

### 6. Weighing the TRAC Factors

The Court finds that the first and fourth *TRAC* factors weigh against granting Plaintiffs' requested relief, while the third and fifth factors weigh in favor of granting Plaintiffs' request. However, in evaluating the *TRAC* factors, "courts routinely afford the most weight" to the first and fourth factors. *Poursohi*, 2021 WL 5331446, at *11.

The Court finds that the overall balance favors Defendants as factor one, which is the most important factor, weighs heavily in their favor. *In re A Cmty. Voice*, 878 F.3d at 786. While the Court is sympathetic to Plaintiffs' situation and unique hardships that Plaintiffs face, the weight of caselaw dictates that the thirteen-month delay in adjudicating Plaintiff Oskoui's visa application is not unreasonable. Further, Plaintiffs have not demonstrated the existence of any disputed material facts that would preclude summary judgment.

Although the Court can foresee a point at which the delay in ruling on Plaintiffs' visa application would be unreasonable, based on the existing record, that time has not yet come. Accordingly, the Court concludes that Defendants are entitled to summary judgment on Plaintiffs' APA claim for unreasonable delay.

## II. Plaintiffs' Mandamus Act Claim

The Ninth Circuit has recognized that relief sought under the Mandamus Act and the APA is "essentially the same." *Indep. Mining Co.*, 105 F.3d at 507. Thus, "when a complaint seeks relief under the Mandamus Act and the APA and there is an adequate remedy under the APA, [the Court] may elect to analyze the APA claim

only." *Vaz v. Neal*, 33 F.4th 1131, 1135 (9th Cir. 2022). "If Plaintiffs' APA claim fails, their claim under the Mandamus Act fails as well." *Infracost Inc. v. Blinken*, 732 F. Supp. 3d 1240, 1251–52 (S.D. Cal. 2024).

As Plaintiffs seek relief under the APA as well as the Mandamus Act, the Court need not separately analyze Plaintiffs' Mandamus Act claim. *See, e.g., Shahijani*, 2023 WL 6889774, at *2 ("Where, as here, a plaintiff seeks identical relief under the APA and the Mandamus Act, courts routinely elect to analyze both claims under the APA only."). Because the Court grants summary judgment as to Plaintiffs' APA claim, the Court grants summary judgment on Plaintiffs' Mandamus Act claim.

### III. Plaintiffs' Fifth Amendment Due Process Claim

In the Complaint, Plaintiffs mention in a single paragraph that they have "been denied due process of law under the terms of the Fifth Amendment to the United States Constitution . . . ." (Compl. ¶ 50.) Defendants interpret this to mean that Plaintiffs are asserting a due process claim and seek dismissal of that claim. (*See* Mot. at 2.) However, Plaintiffs' Opposition does not assert that they are pursuing a due process claim and does not mention due process at any point. (*See* Opp'n.) Thus, it does not appear that Plaintiffs are actually pursuing a due process claim under the Fifth Amendment.

Even if Plaintiffs were pursuing a Due Process claim, that claim would be foreclosed by the Supreme Court's recent decision in *Department of State v. Munoz*, 144 S. Ct. 1812 (2024), wherein the Supreme Court held that "a citizen does not have a fundamental liberty interest in [their] noncitizen spouse being admitted to the country." *Id.* at 1821. Consistent with that decision and to the extent Plaintiffs did intend to assert a due process claim, the Court concludes Plaintiffs have failed to plausibly allege a deprivation of a fundamental liberty interest. Thus, even if Plaintiffs did bring a due process claim, the Court would grant summary judgment in Defendants' favor.

////

16

## CONCLUSION

In accordance with the above, it is hereby ORDERED that Defendants' Motion for Dismissal and Summary Judgment (ECF No. 8) is GRANTED.  The Court finds that Defendants are entitled to judgment on all of Plaintiffs' claims.  The Clerk of Court is directed to enter judgment in Defendants' favor.

IT IS SO ORDERED.

Dated:   **April 16, 2026**

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

17